Robert J. Kane (SBN 50856)
rkane@stuartkane.com
STUART KANE LLP
620 Newport Center Drive, Suite 200
Newport Beach, CA 92660
Telephone: (949) 791-5127
Facsimile: (949) 791-5227

Max C. Fischer (SBN 226003)
mfischer@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Angela C. Zambrano (Texas Bar No. 24003157)
angela.zambrano@sidley.com
Sidley Austin LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 981-3405
Facsimile: (214) 981-3400

Attorneys For Petitioners
ACCENTCARE, INC. and ACCENTCARE OF
CALIFORNIA, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARINA McNEAL, individually and on behalf of other aggrieved employees under the Labor Code Private Attorneys General Act of 2004,<br><br>   Plaintiff,<br><br>vs.<br><br>ACCENTCARE, INC., ACCENTCARE OF CALIFORNIA, INC., and DOES 1 through 50,<br><br>   Defendants. | Case No. 3:15-cv-03304-KAW<br><br>**PETITIONERS' PETITION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Magistrate Judge Kandis A. Westmore<br><br>State Action Filed: June 15, 2015<br><br>Hearing Date: September 3, 2015<br>Hearing Time: 11:00 a.m.<br>Oakland Courthouse<br>[[Proposed] Order Granting Petitioners' Petition to Compel Arbitration] |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF PETITION AND PETITION

### TO THE HONORABLE MAGISTRATE JUDGE WESTMORE AND TO RESPONDENT AND HER ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on September 3, 2015, at 11:00 a.m. or as soon thereafter as the matter can be heard in the Courtroom of the Honorable Magistrate Judge Kandis A. Westmore, located at the Oakland Courthouse, 1301 Clay Street in Oakland, California, Defendant-Petitioners AccentCare, Inc. ("AccentCare") and AccentCare of California, Inc. ("AccentCare of CA," and, together with AccentCare, "Petitioners") shall and hereby do respectfully petition the Court for an order compelling Plaintiff-Respondent Sharina McNeal ("Respondent") to individually arbitrate all of the claims that she has alleged against Petitioners in various forums.

Petitioners petition to compel individual arbitration pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 2, 3 and 4, and supporting case law, on the grounds that Respondent and Petitioners agreed to arbitrate "any and all" disputes "relating to or arising out of [Respondent's] employment or the cessation of that employment" on an individual basis when she became employed with AccentCare of CA and signed a bilateral arbitration agreement, titled "Comprehensive Agreement Employment At-Will and Mutual/Bilateral Arbitration" (the "Bilateral Arbitration Agreement" or "Agreement").

The Petition is based on this Notice of Petition and Petition, the accompanying Memorandum of Points and Authorities, all the other papers, documents, or exhibits on file or to be filed in this action, and the arguments to be made at the hearing on the Petition.

Dated: July 22, 2015                                    Respectfully Submitted,


By: /s/ *Max Fischer*_____
　　　　　Robert J. Kane
　　　　　Max Fischer
　　　　　*Attorneys for Petitioners*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   STATEMENT OF RELEVANT FACTS ......................................................... 2

    A.   The Parties Entered Into an Enforceable Arbitration Agreement. ............................... 2

    B.   The Terms of the Bilateral Arbitration Agreement Contemplate and Permit Only Individual Arbitration Proceedings ......................................................... 3

    C.   Respondent Filed This Action in Violation of the Agreement, While at the Same Time Filing an Individual Arbitration Demand With the AAA Based on the Same Allegations. ......................................................... 3

III.  JURISDICTION ........................................................................ 4

IV.   VENUE ........................................................................ 5

V.    CLAIM FOR RELIEF (To Compel Individual Arbitration—9 U.S.C. § 4) ......................................................... 5

    A.   There is no dispute that the Agreement encompasses the claims in the Complaint and that it is valid and enforceable in light of Respondent's invocation of the Agreement to pursue individual arbitration based on the same facts. ......................................................... 6

    B.   Arbitration must be compelled in accordance with the terms of the Agreement on an individual, not classwide or representative basis. ......................................................... 7

    C.   Respondent's invocation of PAGA does not alter her obligation to arbitrate even PAGA claims on an individual basis ......................................................... 9

    D.   Ordering arbitration on an individual basis, in accordance with the Agreement's terms, and the determination of which parties are bound to arbitrate are for the court, not an arbitrator. ......................................................... 11

VI.   CONCLUSION ........................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accentcare, Inc. v. Echevarria,*
    No. 15-CV-1078-JSW (June 1, 2015)...........................................................................14

*Armendariz v. Found. Health Psychare Servs.,*
    24 Cal. 4th 83 (2000) .......................................................................................................7

*AT&T Mobility, LLC v. Concepcion,*
    131 S. Ct. 1740 (2011).....................................................................................................11

*Bernal v. Sw. & Pac. Specialty Fin., Inc.,*
    No. C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 7, 2014) .............................15

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    No. 14-cv-02510, C-07-5944-SC, MDL 1917, 2014 WL 7206620 (N.D. Cal. Dec.
    18, 2014) ..........................................................................................................................15

*Chico v. Hilton Worldwide, Inc.,*
    No. 14-cv-5750-JFW-SSX, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014)...............9, 12

*CompuCredit Corp. v. Greenwood,*
    132 S. Ct. 665 (2012)......................................................................................................11

*Crook v. Wyndham Vacation Ownership, Inc.,*
    No. 13-cv-03669-WHO, 2013 WL 6039399 (N.D. Cal. Nov. 8, 2013), *appeal
    filed*, No. 13-17472 (9th Cir. July 22, 2015)..................................................................15

*EEOC v. Waffle House Inc.,*
    534 U.S. 279 (2002)...........................................................................................................5

*Estrada v. CleanNet USA, Inc.,*
    No. 14-cv-01785-JSW, 2015 WL 833701 (N.D. Cal. Feb. 24, 2015) ......................9, 10

*Fardig v. Hobby Lobby Stores Inc.,*
    No. SACV 14-00561 JVS (ANx), 2014 WL 4782618 (C.D. Cal. Aug. 11, 2014).........10, 11

*Geographic Expeditions, Inc. v. Estate of Lhotka,*
    599 F.3d 1102 (9th Cir. 2010) ....................................................................................4, 5, 7

*Green Tree Fin. Corp. v. Bazzle,*
    539 U.S. 444 (2003).........................................................................................................13

*Hernandez v. DMSI Staffing, LLC,*
    --- F. Supp. 3d ----, No. C-14-1531 EMC, 2015 WL 458083 (N.D. Cal. Feb. 3,
    2015) ................................................................................................................................10

ii

*Iskanian v. CLS Transp. Los Angeles, LLC*,
   59 Cal. 4th 348 (2014) ..........................................................................................10, 11

*John Wiley & Sons, Inc. v. Livingston*,
   376 U.S. 543 (1964)..................................................................................................12

*Kinecta Alt. Fin. Solutions, Inc. v. Super. Ct.*,
   205 Cal. App. 4th 506 (2012) ....................................................................................9

*Lopez v. Ace Cash Express, Inc.*,
   No. LA CV11-04611-JAK, No. LA CV11-07116-JAK, 2012 WL 1655720 (C.D.
   Cal. May 4, 2012) ....................................................................................................15

*Lucero v. Sears Holdings Mgmt. Corp.*,
   No. 14-cv-1620 AJB (WVG), 2014 WL 6984220 (S.D. Cal. Dec. 2, 2014)............6, 10

*Mill v. Kmart Corp.*,
   No. 14-cv-02749-KAW, 2014 WL 6706017 (N.D. Cal. Nov. 26, 2014) ....................10

*Moody v. Metal Supermarket Franchising Am., Inc.*,
   No. C-13-5098-PJH, 2014 WL 988811 (N.D. Cal. Mar. 10, 2014) ............................14

*Nanavati v. Adecco USA, Inc.*,
   No. 14-cv-04145-BLF, 2015 WL 1738152 (N.D. Cal. Apr. 13, 2015) ....................6, 10

*Nelsen v. Legacy Partners Residential, Inc.*,
   207 Cal. App. 4th 1115 (2012), *as modified on denial of reh'g* (Aug. 14, 2012),
   *review denied* (Oct. 31, 2012) ....................................................................................8

*Opalinksi v. Robert Half Int'l Inc.*,
   761 F.3d 326 (3d Cir. 2014)......................................................................................12

*Oracle Am., Inc. v. Myriad Group A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ..................................................................................14

*Ortiz v. Hobby Lobby Stores, Inc.*,
   52 F. Supp. 3d 1070 (E.D. Cal. 2014 ........................................................................10

*Oxford Health Plans, LLC v. Sutter*,
   133 S. Ct. 2064, 2071-72 (2013)..........................................................................7, 12, 15

*Quevedo v. Macy's, Inc.*,
   798 F. Supp. 2d 1122 (C.D. Cal. 2011) ....................................................................11

*Reed Elsevier, Inc. v. Crockett*,
   734 F.3d 594 (6th Cir. 2013) ................................................................................12, 13

*Reed v. Florida Metro. Univ., Inc.*,
   681 F.3d 630 (5th Cir. 2012) ....................................................................................15

iii

*Safadi v. Citibank, N.A.*,
No. 12-1356-PSG, 2012 WL 4717875 (N.D. Cal. Oct. 2, 2012)................................12

*Soto v. Am. Honda Motor Co.*,
946 F. Supp. 2d 949 (N.D. Cal. 2012) ...............................................................12

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
559 U.S. 662 (2010)..........................................................................7, 8, 9, 13

*Tompkin v. 23andMe, Inc.*,
No. 13-cv-05682-CHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014)..................13, 14

*Uptown Drug Co. v. CVS Caremark Corp.*,
962 F. Supp. 2d 1172 (N.D. Cal. July 22, 2013) ......................................................13

*Vaden v. Discovery Bank*,
556 U.S. 49, 129 S. Ct. 1262 (2009) ................................................................4

*In re Van Dusen*,
654 F.3d 838 (9th Cir. 2011) ......................................................................12, 14

*Yahoo! Inc. v. Iversen*,
836 F. Supp. 2d 1007 (N.D. Cal. 2011) ...........................................................14

*Yahoo! Inc. v. Iversen*,
No. 11-CV-03282-LHK (N.D. Cal. 2011) .........................................................14

*Zenelaj v. Handybook, Inc.*,
—F. Supp. 3d—, 2015 WL 971320 (N.D. Cal. Mar. 3, 2015) .............................14

**Statutes**

9 U.S.C. § 2 ..................................................................................................5

9 U.S.C. § 4 ......................................................................................4, 6, 7, 12

28 U.S.C. § 1332(a)(1) ..................................................................................4

28 U.S.C. § 1391(a) ......................................................................................5

California Labor Code § 226(a) ............................................................... *passim*

California's Private Attorney General Act ("PAGA") ................................. *passim*

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A) ...........................4

**Other Authorities**

*Oxford English Dictionary Online*, *available at*
http://www.oed.com/view/Entry/18936?redirectedFrom=bilateral#eid .................7, 8

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     PRELIMINARY STATEMENT**

Respondent executed and agreed to be bound by the Bilateral Arbitration Agreement ("Agreement"), pursuant to which she agreed to individually arbitrate "any controversy, claim or dispute between [her] and the Company . . . relating to or arising out of [her] employment or the cessation of that employment."  (*See* Declaration of Contessa Rogers, attached hereto as Exhibit 1 ("Rogers Decl." or Ex. 1.)

Conceding the application and enforceability of the Agreement, Respondent already has instituted an individual arbitration proceeding with respect to claims arising under various provisions of the California Labor Code ("Labor Code").  *See* Exhibit 2 ("Arbitration Demand" or Ex. 2) However, at the same time, Respondent has attempted to seek relief for herself and a group of employees for restitution of unpaid wages and relief under the California's Private Attorney General Act ("PAGA") in the underlying complaint in this matter (the "Complaint") based on the same facts alleged in the Arbitration Demand.

Respondent's Complaint constitutes ***the third, concurrent attempt*** at class litigation that her counsel have initiated against Petitioners based on the same facts, and it is part of an overall strategy to multiply and tax both Petitioners' expenses and the Court's resources and to avoid Respondent's and other of Petitioners' employees' obligation to arbitrate individually.  *See* Ex. 3 (Demand for Class Arbitration of Echevarria and Hayes, AAA Case No. 01-15-0002-7838; Ex. 4 (Demand for Class Arbitration of Ebony Jacobs, AAA Case No. 01-15-0004-2105).

Thus, Petitioners respectfully petition the Court to order Respondent to comply with the terms of the Agreement and to compel the claims she seeks to bring in the Complaint to individual, bilateral arbitration.  As follows, Respondent's attempt to circumvent the clear terms of the binding Agreement must fail.  The Agreement between the Parties does not permit strangers to their bilateral agreement to join in any class or other multi-party arbitration, and therefore, this Court should grant Petitioners' motion and compel Respondent to pursue *all* of her claims in the Complaint on an individual basis through individual arbitration.

## II.      STATEMENT OF RELEVANT FACTS

### A.      The Parties Entered Into an Enforceable Arbitration Agreement.

1.      AccentCare of CA employs in-home Care Partners who work primarily in private residences, including single-family homes, apartments and senior living communities, providing assistance in dressing, feeding and supervising those in need of such services because of advanced age or physical or mental disability, which allows such individuals to live at home and avoid institutionalization.  (*See* Declaration of Jeffrey Franck, attached hereto as Exhibit 5 ("Franck Decl.") ¶ 2.)

2.      Respondent has been employed by AccentCare of CA as an in-home Care Partner since April 18, 2012.  (*See* Rogers Decl., ¶ 2.)  As part of the on-boarding process, AccentCare of CA employees are asked to review the Bilateral Arbitration Agreement and are given an opportunity to ask questions and seek clarification with respect to its terms and provisions.  (*See id.* at ¶ 3.)  Thereafter, employees execute the Agreement by signing and dating the second page thereof.  (*Id.*)  Accordingly, Respondent signed the Agreement on April 17, 2012, signifying that she "read, underst[ood], and agree[d] to be legally bound to all of the [Agreement's] terms."  (*Id.* at ¶ 5, Ex. A.)  Specifically, Respondent agreed as follows:

> [A]ny controversy, claim or dispute between Employee and the Company . . . relating to or arising out of Employee's employment or the cessation of that employment . . . will be submitted to final and binding arbitration . . . as the exclusive remedy for such controversy, claim or dispute.
>
>                         *      *      *
>
> Possible disputes covered by the above include (but are not limited to) unpaid wages, breach of contract, torts, violation of public policy, discrimination, harassment, or any other employment-related claims under laws including but not limited to, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the California Fair Employment and Housing Act and the California Labor Code . . . and/or any other applicable statutes or laws, or applicable statutes and laws of other states (where employed) relating to an employee's employment relationship with his/her employer, regardless of whether such dispute is initiated by the employee or the Company.

(*Id.*)

**B.  The Terms of the Bilateral Arbitration Agreement Contemplate and Permit Only Individual Arbitration Proceedings**

3.      Even apart from its title, which limits proceedings to "bilateral"—*i.e.*, two-party—arbitrations, the Bilateral Arbitration Agreement contains several provisions that contemplate and permit only individual arbitration proceedings.  First, the Agreement provides for arbitration only "between" the singular "Employee," on one hand, and the "Company," on the other hand, repeatedly referring to this Employee using the singular pronouns, "him/her."  (*Id.*)  Likewise, any individual arbitration proceeding under the Agreement must take place in "the county" in which such singular "Employee work(ed)."  (*Id.*)   And, the "Employee" may not disclose anything relating to "his/her" dispute with the Company to anyone outside of the individual arbitration proceeding.  (*Id.*)  Finally, the Agreement contains no mention or authorization of classwide procedures.

**C.  Respondent Filed This Action in Violation of the Agreement, While at the Same Time Filing an *Individual* Arbitration Demand With the AAA Based on the Same Allegations.**

4.      Despite her express agreement to submit to *individual* arbitration *any* dispute concerning her employment, Respondent filed the instant purported representative and class action lawsuit on June 15, 2015.  (*See* Dkt. No. 1, Ex. 1.)  In her Complaint, Respondent seeks relief for restitution of unpaid wages and under PAGA for herself and certain alleged "Aggrieved Employees," which she defines to include all current and former employees of Petitioners during the period from April 23, 2014 through the present against whom one or more violations of the Labor Code are alleged to have been committed.  (*See id.* at ¶¶ 2-3.)  She bases her claims on the allegation that Petitioners were required to, but did not, compensate Respondent and the Aggrieved Employees for all twenty-four hours that they allegedly worked during each shift.  (*See id.* at ¶¶ 26-29.)

5.      Only days after filing the Complaint, Respondent submitted the Arbitration Demand containing certain other Labor Code claims concerning her employment to *individual* arbitration.  (*See* Ex. 2.)  Significantly, Respondent's claims in the Arbitration Demand are based on the exact same allegations in her Complaint—namely, that Petitioners failed to compensate Respondent for all hours that she allegedly worked, as set forth above.  (*See* Ex. 2 at II.A.)  These Labor Code claims will proceed in arbitration on an individual basis in accordance with the parties' Agreement.

6.      On July 15, 2015, Petitioners answered Respondent's Complaint and, the next day, removed the case to this Court, expressly reserving their right to compel Respondent to arbitrate her claims on an individual basis. (*See* Dkt. No. 1.) Now, because Respondent has sought impermissibly to litigate in court on a multi-plaintiff basis claims covered by the Agreement and required to be arbitrated on an individual basis, Petitioners hereby move this Court for an order: (1) compelling Respondent to submit *all* of her claims in the Complaint to binding individual arbitration in accordance with the Agreement; and (2) staying these proceedings pending such individual arbitration.

## III.   JURISDICTION

7.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) ("Section 1332") and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A) ("CAFA").

8.      The Ninth Circuit has held that "a federal court has jurisdiction over a petition to compel arbitration if the federal court would have jurisdiction over the underlying substantive dispute[.]" *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (citing *Vaden v. Discovery Bank*, 556 U.S. 49, 129 S. Ct. 1262, 1273 (2009)). Accordingly, a federal court has jurisdiction if the parties are diverse and the underlying dispute would satisfy the amount in controversy requirement. *See id.* In determining whether jurisdiction exists, federal courts examine the "full-bodied controversy"—*i.e.*, "[w]hether or not the controversy between the parties is embodied in an existing suit, the relevant question remains the same: Would a federal court have jurisdiction over an action arising out of that full-bodied controversy?" *Vaden*, 556 U.S. at 68 n. 16 (noting also that "§ 4 does not ask a district court to determine whether it would have jurisdiction over 'the controversy the § 4 petitioner seeks to arbitrate;' it asks whether the court would have jurisdiction over 'the controversy between the parties'"). Ultimately, the "good faith allegations in [Petitioners'] petition as to the amount in controversy suffice to establish the jurisdictional amount unless it appears *legally certain* that the amount in dispute" does not satisfy the jurisdictional amount. *See Geographic Expeditions, Inc.*, 599 F.3d at 1107 (emphasis added).

9.      Here, the full-bodied controversy between the parties consists of Respondent's claims and allegations in her Complaint and Arbitration Demand, which together—or individually—place

4

the amount in controversy well above the jurisdictional minimums.[1]  Indeed, as set forth in Petitioners' Notice of Removal, even considering only the allegations contained in Respondent's Complaint, the amount in controversy exceeds the $75,000 threshold under Section 1332 with respect to the restitution and other relief that Respondent seeks for herself, and also exceeds CAFA's $5,000,0000 threshold with respect to the restitution and other relief for the allegedly Aggrieved Employees on whose behalf Respondent purports to bring this action.  (*See* Dkt. No. 1 at ¶¶ 7-14.)

10.     Likewise, the jurisdictional minimum under Section 1332 would be satisfied even considering only the individual claims that Respondent has brought in her Arbitration Demand. Specifically, Respondent seeks relief in her Arbitration Demand for allegedly unpaid minimum and overtime wages, additional liquidated amounts for unpaid minimum wages, restitution, waiting time penalties pursuant to Labor Code § 226(a), attorneys' fees and interest.  (*See* Ex. 2.)  Such relief alone would exceed the $75,000 threshold under Section 1332, *see* Dkt. No. 1 at 10-13; considering such relief together with that sought in her Complaint, as required by *Geographic Expeditions*, the amount in controversy greatly exceeds the jurisdictional minimums.

## IV.     VENUE

11.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## V.     CLAIM FOR RELIEF (To Compel Individual Arbitration—9 U.S.C. § 4)

12.     Petitioners re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 11 above, as though fully set forth herein.

13.     The FAA governs the enforceability of any written arbitration agreement relating to transactions "involving commerce."  9 U.S.C. § 2.  The Supreme Court has expressly recognized that contracts relating to employment involve commerce and, thus, are covered by the FAA.  *See EEOC v. Waffle House Inc.*, 534 U.S. 279, 289 (2002).  Moreover, the executive corporate functions of

---

[1]As set forth in Petitioners' Notice of Removal, the parties are completely diverse, and the putative class of Aggrieved Employees exceeds 100 individuals.  *See* Dkt. No. 1 at ¶¶ 4, 8.

AccentCare and AccentCare of CA span multiple states.  (*See* Franck Decl., ¶ 2.)  Therefore, the FAA applies to the Bilateral Arbitration Agreement.

14.     This Court's role in resolving this Petition is (1) to determine whether the agreement encompasses the dispute at issue, and (2) resolve whether the agreement is otherwise valid; and (3) order compliance with the agreement "in accordance with its terms."  9 U.S.C. § 4.

**A.    There is no dispute that the Agreement encompasses the claims in the Complaint and that it is valid and enforceable in light of Respondent's invocation of the Agreement to pursue individual arbitration based on the same facts.**

15.     Respondent already has effectively conceded that (1) the Agreement encompasses the claims raised in the Complaint and (2) that is valid and enforceable by invoking it to bring the Arbitration Demand on the same facts alleged in the Complaint.  Thus, pursuant to Section 4 of the FAA, the Court should compel arbitration in accordance with its terms, namely the arbitration of the claims in the Complaint on an individual basis.

16.     First, the claims raised in the Complaint all emanate from an alleged failure to provide required compensation for eight hours of sleep time during each 24-hour shift that a care partner worked.  (*See* Dkt. No. 1, Ex. 1 at ¶¶ 2-3, 13-29.)  This is the identical basis for the claims alleged in the Arbitration Demand, and, thus, Plaintiff is estopped from denying that such claims are within the scope of the Agreement.  In addition, the Complaint specifically requests relief in the form of restitution and civil penalties for violations of the California Labor Code.  (*Id.* at ¶ 3.)  The Agreement specifically encompasses disputes arising under the "California Labor Code."  (*See* Rogers Decl., Ex. A.)  Courts have routinely held that such claims under the California Labor Code fall squarely within arbitration agreements similar to the Agreement.  *See, e.g.*, *Nanavati v. Adecco USA, Inc.*, No. 14-cv-04145-BLF, 2015 WL 1738152, at *9 (N.D. Cal. Apr. 13, 2015) (finding that "all of plaintiff's claims," including those for damages and civil penalties, fell "within the scope of the Agreement, as they a[rose] out of 'the employment relationship between the parties'"); *Lucero v. Sears Holdings Mgmt. Corp.*, No. 14-cv-1620 AJB (WVG), 2014 WL 6984220, *6 (S.D. Cal. Dec. 2, 2014) ("Plaintiffs bring various claims related to their employment with Defendants, which are clearly in the purview of the Agreement.").

17.     Second, the Agreement is clearly valid and enforceable as Respondent's own invocation of it to pursue similar claims in individual arbitration already evidences.  In any event, the Agreement complies with the requirements of California law.  *See generally Armendariz v. Found. Health Psychare Servs.*, 24 Cal. 4th 83 (2000).

**B.     Arbitration must be compelled in accordance with the terms of the Agreement on an individual, not classwide or representative basis.**

18.     Pursuant to Section 4 of the FAA:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . in a civil action . . . of the subject matter arising out of the controversy between the parties, for an order directing that such arbitration proceed *in the manner provided for in such agreement*.

9 U.S.C. § 4 (emphasis added); *Geographic Expeditions, Inc.*, 599 F.3d at 1106.

19.     The Supreme Court has made clear that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Oxford Health Plans, LLC*, 133 S. Ct. 2064, 2066 (2013) ("[C]lass arbitration is a matter of consent.").  As set forth below, the Bilateral Arbitration Agreement expressly contemplates arbitration of Respondent's claims only on an *individual* basis and nowhere authorizes or even references a representative or class arbitration.  Accordingly, the Court's order should compel arbitration of *all* of Respondent's claims only on an individual basis, "in accordance with the terms of the agreement." 9 U.S.C. § 4.

20.     Indeed, the Bilateral Arbitration Agreement repeatedly and exclusively evinces the Petitioners' agreement only to arbitrate with their individual employees, not with a class or a representative plaintiff.  The Agreement's title is "*Bilateral* Arbitration," and "bilateral" is defined as:  "[o]f, pertaining to, affecting, or arranged upon *two sides*;" "[p]ertaining to or affecting *two parties*."  *See Oxford English Dictionary Online*, *available at* http://www.oed.com/view/Entry/18936?redirectedFrom=bilateral#eid (emphasis added).  Indeed, the Supreme Court distinguished "bilateral" and "class-action" arbitration agreements in *Stolt-Nielsen*, stating that "the differences between bilateral and class-action arbitration are too great for arbitrators

7

1   to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes

2   consent to . . . class proceedings." 559 U.S. at 687.

3        21.    Furthermore, the Agreement covers claims only "between" the "Employee," on one

4   hand, and "the Company," on the other hand.[2]  In a similar case, the California Court of Appeal

5   noted:

> The agreement only covers claims, disputes, and controversies 'between myself
> and Legacy Partners,' that is, between Nelsen and LPI.  A class action by its
> very nature is not a dispute or controversy 'between Nelsen and Legacy
> Partners.'  In this case (assuming a class was certified) it would be a dispute
> between LPI and numerous different individuals, one of whom is Nelsen.
> Although LPI agreed with Nelsen to arbitrate all kinds of disputes that might
> arise between *them*, this choice of contractual language, by its ordinary
> meaning, unambiguously negates any intention by LPI to arbitrate claims or
> disputes to which Nelsen was not a party.

11  *See Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1129-30 (2012), *as*

12  *modified on denial of reh'g* (Aug. 14, 2012), *review denied* (Oct. 31, 2012).

13       22.    Likewise, the Agreement, far from authorizing or even referencing classwide

14  procedures, is replete with references to an individual employee bringing a claim only on his or her

15  behalf.  For instance, the Agreement provides that any arbitration will take place in "the county in

16  which Employee work(ed)."  (*See* Rogers Decl., Ex. A.)  A class arbitration with multiple employee-

17  claimants from several different counties could not possibly comply with this provision.  Further, the

18  Agreement covers statutes and laws "relating to an employee's relationship with his/her employer,"

19  and informs the "Employee" of "his/her" right to consult an attorney.  (*Id.*)  Courts construing

20

21  [2] The Agreement's reference to multiple employees in the parenthetical following "Company,"
which provides that the Agreement is "between" the "Employee," on one hand, and "the Company

22  (and/or any of its owners, directors, officers, employees, affiliates, or agents)," on the other hand,
cannot be construed to permit classwide procedures.  The use of the word "between" in the

23  Agreement makes clear that the individual "Employee" may arbitrate only *against*—not on the same
side as—"the Company (and/or any of its owners, directors, officers, employees, affiliates, or

24  agents)."  *See Oxford English Dictionary Online* (defining "between" as "[e]xpressing the position
of any thing [e.g., arbitration proceedings] confined or enclosed by objects on opposite sides"),

25  *available at* http://www.oed.com/view/Entry/18395?redirected From=%22between%22#eid.  The
doctrine of *noscitur a sociis*—that words are "known by the company they keep"—mandates that

26  "employees," which appears in a list of entities *against which* an individual "Employee" may bring

27  arbitration, must take on the same status as "the Company" and "owners, directors, officers, . . .

28  affiliates, or agents," namely the status of respondents in an arbitration proceeding.

**CASE NO. 3:15-CV-03304-KAW**
**PETITIONERS' PETITION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

similar provisions have found them to permit only individual, bilateral arbitration.  *See, e.g.*, *Chico v. Hilton Worldwide, Inc.*, No. 14-cv-5750-JFW-SSX, 2014 WL 5088240 at *12 (C.D. Cal. Oct. 7, 2014)(holding that the arbitration agreements did not authorize class arbitration, noting that the agreements "repeatedly refer to Plaintiff in the singular and make no reference to employee groups, putative class members, other employees, or other employees' claims or disputes"); *Kinecta Alt. Fin. Solutions, Inc. v. Super.  Ct.*, 205 Cal. App. 4th 506, 517-18 (2012) (holding "the parties did not agree to authorize class arbitrations in their arbitration agreement" and noting references to "I," "me" and "my … employment").

23.     In addition, the Agreement contains a confidentiality provision which is completely untenable in conjunction with any type of expectation of, or agreement to, class-wide arbitration. (*See* Rogers Decl., Ex. A (stating that the arbitration "shall be confidential and will not be disclosed to anyone other than participants"—*i.e.*, the court reporter, arbitrator, individual employee and the Company—"and witnesses in the arbitration").)  The Supreme Court flagged the concern regarding confidentiality being inconsistent with class arbitration in *Stolt-Nielsen*, when it noted "[u]nder the Class Rules, '[t]he presumption of privacy and confidentiality' that applies in many bilateral arbitrations "shall not apply in class arbitrations," . . . thus potentially frustrating the parties' assumptions when they agreed to arbitrate."  *Stolt-Nielsen*, 559 U.S. at 686.

24.     Therefore, Petitioners did not agree to arbitrate with Respondent on a classwide or representative basis, and she should be compelled to arbitrate *all* of her claims solely on an individual—and not a class or representative—basis in accordance with the terms of the Agreement.

**C.     Respondent's invocation of PAGA does not alter her obligation to arbitrate even PAGA claims on an individual basis.**

25.     Courts in this District and elsewhere have held that, where a Respondent has agreed to arbitrate her claims on an individual basis, such Respondent must arbitrate her PAGA claims only on that basis in accordance with the terms of the arbitration agreement.  *See Estrada v. CleanNet USA, Inc.*, No. 14-cv-01785-JSW, 2015 WL 833701, at *5 (N.D. Cal. Feb. 24, 2015) ("Plaintiffs may arbitrate their PAGA claims [in arbitration] as individuals or, to the extent California law permits, as state agents, provided their relief is limited to that which they could obtain as

9

1    individuals."); *see also, e.g.*, *Nanavati*, 2015 WL 1738152, at *9 (holding that plaintiff, who had

2    signed an individual arbitration agreement, could "only pursue his [PAGA] claims in an individual

3    capacity"); *Fardig v. Hobby Lobby Stores Inc.*, No. SACV 14-00561 JVS (ANx), 2014

4    WL 4782618, *4 (C.D. Cal. Aug. 11, 2014) (same). Therefore, the Court should compel Respondent

5    to arbitrate her PAGA claims—along with all of her other claims—on an individual basis in

6    accordance with the terms of the Bilateral Arbitration Agreement, wherein Respondent may obtain

7    relief limited to what she could obtain as an individual.

8        26.    Respondent likely will argue that the Agreement is unenforceable under *Iskanian v.*

9    *CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014), to the extent that it purports to compel

10   individual arbitration of Respondent's representative PAGA claims. However, this is incorrect.

11       27.    As a threshold matter, *Iskanian* does not bind this Court.[3] More importantly, *Iskanian*

12   was wrongly decided: nearly every federal court in California to decide the issue, including courts

13   in this District, has rejected *Iskanian* and held that the FAA preempts California's state rule

14   purporting to prohibit individual arbitration of PAGA claims. *See, e.g.*, *Estrada*, 2015 WL 833071,

15   at *5 ("The California Supreme Court's holding in *Iskanian* notwithstanding, this Court is bound to

16   examine for itself whether PAGA waivers are permissible . . . . To the extent the *Iskanian* holding

17   would frustrate the FAA's goals, the Court finds that it is preempted."); *Mill v. Kmart Corp.*, No. 14-

18   cv-02749-KAW, 2014 WL 6706017 at *6-7 (N.D. Cal. Nov. 26, 2014)(collecting cases); *but see*

19   *Hernandez v. DMSI Staffing, LLC*, --- F. Supp. 3d ----, No. C-14-1531 EMC, 2015 WL 458083

20   (N.D. Cal. Feb. 3, 2015) (finding PAGA claims subject to arbitration but finding they may be

21   arbitrated on classwide basis), *appeal docketed*, No. 15-15366 (9th Cir. Mar. 2, 2015).[4] This is

22   because *Iskanian* violates the fundamental rule stated in *Concepcion*: "When state law prohibits

23   outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting

24

25   _____

     [3] Federal decisions in California acknowledging that *Iskanian* is not binding on federal courts are
26   legion. *See, e.g.*, *Lucero*, 2014 WL 6984220 at *4 ("The Court notes that it is not bound by the state
     supreme court's interpretation of federal law."); *see also Mill*, 2014 WL 6706017 at *6-7; *Ortiz v.*
27   *Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070 (E.D. Cal. 2014); *Fardig*, 2014 WL 4782618 at *4.
     [4] Another court recently expressly declined to follow *Hernandez*, holding that it "must respectfully
28   follow the weight of federal courts rejecting *Iskanian*." *See Nanavati*, 2015 WL 1738152 at *7.

rule is displaced by the FAA." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011); *see also CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) (applying *Concepcion* rule to federal statutory claims).

28.    In *Concepcion*, the Supreme Court further emphasized that the FAA promotes arbitration in order to "streamline[] proceedings and expedit[e] results." *Concepcion*, 131 S. Ct. at 1749.  However, allowing PAGA claims to go forward in separate judicial proceedings, where the parties have agreed to submit such claims to individual arbitration, "would slow the dispute resolution process, in opposition to the FAA's goals." *Fardig*, 2014 WL 4782618, at \*3.  As stated by one court:

> [R]equiring arbitration agreements to allow for representative PAGA claims on behalf of other employees would be inconsistent with the FAA.  A claim brought on behalf of others would, like class claims, make for a slower, more costly process.  In addition, representative PAGA claims increase risk to defendants by aggregating the claims of many employees.  Petitioners would run the risk that an erroneous decision on a PAGA claim on behalf of many employees would go uncorrected given the absence of multilayered review.   Just as arbitration is poorly suited to the higher stakes of class litigation, it is also poorly suited to the higher stakes of a collective PAGA action.

*Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1142 (C.D. Cal. 2011).

29.    Therefore, because the FAA preempts *Iskanian*, Respondent must submit her PAGA claims—along with all of her other claims—to individual arbitration, wherein she may obtain relief limited to what she could obtain as an individual.

**D.    Ordering arbitration on an individual basis, in accordance with the Agreement's terms, and the determination of which parties are bound to arbitrate are for the court, not an arbitrator.**

30.    Petitioners anticipate that, in an attempt to avoid an adverse finding on the her obligation to arbitrate individually, Respondent will urge the Court to defer to an arbitrator the gateway question of whether the Agreement requires individual arbitration or permits strangers to the bilateral agreement to participate in a class or representative capacity.  The Court should reject this invitation and reach this important question.

31.    Courts in the Ninth Circuit and elsewhere have held that whether an agreement permits arbitration on behalf of an absent class is a gateway question for the court to decide.  *See,*

11

*e.g.*, *Chico*, 2014 WL 5088240 at *11-12 ("The only two circuits to squarely address the question have concluded that the availability of class arbitration is a 'question of arbitrability' to be decided by the court 'unless the parties clearly and unmistakably provide otherwise.'" (citing *Opalinksi v. Robert Half Int'l Inc.*, 761 F.3d 326, 332-35 (3d Cir. 2014); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 598 (6th Cir. 2013)). Indeed, the Supreme Court's recent opinions have "given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one." *Reed Elsevier, Inc.*, 734 F.3d 594; *see also Oxford Health Plans, LLC*, 133 S. Ct. at 2071-72 (warning that "courts should be wary of concluding that the availability of classwide arbitration is for the arbitrator to decide, as that decision implicates the rights of absent class members without their consent") (Alito, J., concurring).

32.     Whether claims may be pursued in arbitration on behalf of a class who are strangers to a bilateral arbitration agreement between an employee and an employer is a threshold issue of *which parties*—Respondent and Petitioners (individually) or Respondent and the Aggrieved Employees and Petitioners—*agreed to arbitrate* under the Agreement. *See In re Van Dusen*, 654 F.3d 838, 842-43 (9th Cir. 2011) (holding that, before it may compel a party to arbitrate a dispute, a "district court must make an antecedent determination" that there is no issue as to the "making" of the agreement to arbitrate); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) (a person "cannot be compelled to arbitrate if an arbitration clause does not bind [him/her] at all"); *see also* 9 U.S.C. § 4. According to the Ninth Circuit, parties may not delegate the threshold question of whether there is an issue as to "the making of the agreement for arbitration" to an arbitrator. *In re Van Dusen*, 654 F.3d at 842. Similarly, courts in the Northern District have held that whether a non-signatory to an agreement is bound to arbitrate is a question for the court *notwithstanding* a delegation clause purporting to vest "arbitrability" issues with an arbitrator. *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 953 (N.D. Cal. 2012) (finding that court must first decide which parties are bound by arbitration agreement notwithstanding delegation clause); *see also Safadi v. Citibank, N.A.*, No. 12-1356-PSG, 2012 WL 4717875, *3 (N.D. Cal. Oct. 2, 2012) (notwithstanding delegation clause, court decided whether non-signatory was a party to the arbitration agreement).

12

33.     In other words, sending the class arbitration question to an arbitrator would, in effect, put the cart before the horse by compelling parties to arbitration without first deciding the critical, threshold question of whether there is, in fact, an agreement between Petitioners and the absent Aggrieved Employees to arbitrate.  And, it is beyond debate that class and representative arbitration fundamentally alter the parties' bargain.  *See Concepcion*, 131 S. Ct. at 1740, 1751-52; *Stolt-Nielsen*, 559 U.S. at 662, 686-87.  "An incorrect answer in favor of class arbitration would 'forc[e] parties to arbitrate' not merely a single 'matter that they may well not have agreed to arbitrate,' but thousands of them."  *Reed Elsevier, Inc.*, 734 F.3d at 597-599 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)); *see also Opalinski*, 761 F. 3d at 326, 335.  Indeed, this is precisely why the Supreme Court in *Stolt-Nielsen* went to great lengths to disabuse parties that its prior decision in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) could be read to insist that an arbitrator must decide whether a contract permits class arbitration.  *See Stolt-Nielsen*, 559 U.S. at 680 (recognizing that *Bazzle* did not decide the question of who decides the question of class arbitrability).  Therefore, even assuming that the Agreement somehow delegates this question to the arbitrator (which it does not, as set forth below), the Court should determine which parties Petitioners agreed to arbitrate with—Respondent or a group of absent putative "Aggrieved Employees."

34.     Even assuming for sake of argument that the question of whether Respondent could include absent class members in her bilateral arbitration with Petitioners could be delegated to an arbitrator (which it cannot), the parties have not done so here.  There simply is no evidence, let alone clear and unmistakable evidence, of any such delegation.  To the extent Respondent will argue that incorporation into the Agreement of the AAA's National Rules for the Resolution of Employment Disputes ("AAA Employment Rules") somehow rises to the level of such clear and unmistakable evidence, any such argument must fail.  *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1186, n. 15 (N.D. Cal. July 22, 2013).  Courts in the Northern District routinely recognize that the incorporation of AAA Rules does not divest courts of authority to decide the important threshold issue of whether there is an agreement to arbitrate among signatories and non-signatories.  *See, e.g.*, *id.* at 1186 (finding that court had jurisdiction to decide question of arbitrability even though AAA rules were incorporated); *Tompkin v. 23andMe, Inc.*, No. 13-cv-05682-CHK, 2014 WL 2903752,

13

1    *11-12 (N.D. Cal. June 25, 2014)(finding that incorporation of AAA Rules is not clear and

2    unmistakable evidence that parties agreed to delegate questions of arbitrability to an arbitrator);

3    *Moody v. Metal Supermarket Franchising Am., Inc.*, No. C-13-5098-PJH, 2014 WL 988811, *3

4    (N.D. Cal. Mar. 10, 2014) ("The court finds that the Agreements' general reference to the 'then

5    current commercial arbitration rules of the AAA' is not the type of "clear and unmistakable"

6    delegation required by *Momot*, and thus finds that the threshold question of arbitrability remains

7    with the court.").[5]

8    35.    Petitioners acknowledge the court's decision in *Accentcare, Inc. v. Echevarria*, No.

9    15-CV-1078-JSW (June 1, 2015), which held, in reviewing the same agreement at issue here, that

10   whether direct claims under the California Labor Code (not PAGA) can be arbitrated on a classwide

11   basis should be resolved by an arbitrator.  Importantly, the court did not cite or address the authority

12   supplied above as to whether specific questions of class arbitrability—*i.e.*, ***the parties*** with whom

13   Petitioners agreed to arbitrate—are threshold questions that should be decided by the court or an

14   arbitrator.  Instead, the court ***simply assumed*** that questions about whether an agreement permitted

15   class arbitration were ones concerning arbitrability that could be delegated.  It rested on other

16   decisions in California involving delegation of ***other types*** of questions to arbitrators in other

17   contexts—not class arbitration.  *See Echevarria*, Slip Op. at 5-6; *see also, e.g.*, *Oracle Am., Inc. v.*

18   *Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (whether disputes over intellectual

19   property rights were within scope of arbitration clause was question for arbitrator); *Zenelaj v.*

20   *Handybook, Inc.*, —F. Supp. 3d—, 2015 WL 971320, *3 (N.D. Cal. Mar. 3, 2015) (same re: disputes

[5] Petitioners also acknowledge that the decision in *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007 (N.D. Cal. 2011), held that parties can delegate the issue of class arbitrability to an arbitrator by incorporation of the AAA rules.  However, the *Yahoo!* court did not address the foregoing authorities as it does not appear to have been briefed or provided to it.  *See Yahoo! Inc. v. Iversen*, No. 11-CV-03282-LHK (N.D. Cal. 2011) at Dkt. Nos. 3, 22, 23, 30.  Moreover, the same court, with the benefit of full briefing, later rejected the argument that inclusion of AAA rules constituted a delegation of class arbitrability to an arbitrator.  *See Tompkins*, 2014 WL 2903752 at *11-12 (finding that incorporation of AAA Rules did *not* constitute clear and unmistakable delegation of class arbitrability to arbitrator).  In any event, the *Yahoo!* ruling is inconsistent with the FAA and the Ninth Circuit's decision in *In re Van Dusen*, because it abdicates responsibility to determine, in the first instance, if there is an agreement between the parties (i.e., the defendants and the purported class) to arbitrate.

about consciability); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. C 12-05797 SBA, 2014 WL 1868787, *1 (N.D. Cal. May 7, 2014) (same); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-02510, C-07-5944-SC, MDL 1917, 2014 WL 7206620, *2 (N.D. Cal. Dec. 18, 2014) (same re: disputes about "what portion of the merits the[] [parties] agreed to arbitrate"); *Crook v. Wyndham Vacation Ownership, Inc.*, No. 13-cv-03669-WHO, 2013 WL 6039399, *3-4 (N.D. Cal. Nov. 8, 2013) (same re: disputes about whether arbitration agreement was "fraudulently obtained" and whether the agreement applied to the substantive fraud claims at issue), *appeal filed*, No. 13-17472 (9th Cir. July 22, 2015).

36.     Moreover, the Court did not reach the question that numerous other courts in this District have reached concerning the arbitrability of PAGA claims, finding that no PAGA dispute existed in that case.  Accordingly, Petitioners respectfully request that the Court determine here that both Respondent's restitutionary claims—as well as her PAGA claims—should be sent to arbitration on an individual basis.

37.     Finally, Respondent may argue that standard language providing that the Agreement covers "any controversy . . . or dispute" constitutes clear and unmistakable evidence of delegation. But, courts have routinely rejected such arguments.  *See, e.g.*, *Reed v. Florida Metro. Univ., Inc.*, 681 F.3d 630, 642 (5th Cir. 2012) (collecting cases), *abrogated on other grounds*, *Oxford Health Plans, LLC*, 133 S. Ct. 2064; *see also Lopez v. Ace Cash Express, Inc.*, No. LA CV11-04611-JAK, No. LA CV11-07116-JAK, 2012 WL 1655720, *1 (C.D. Cal. May 4, 2012) (court decided arbitrability though arbitration clause covered "any controversy").

38.     In sum, the Court—not an arbitrator—must decide the question of with whom the Petitioners agreed to arbitrate.  And, the clear terms of the Bilateral Arbitration Agreement provide for arbitration solely on a bilateral, individual basis.

## VI.    CONCLUSION

Petitioners respectfully request that the Court grant its Petition and compel Respondent to arbitrate all her claims against Petitioners in her already initiated individual arbitration.

15

Dated:  July 22, 2015

By:   /s/ Max Fischer

Robert J. Kane
Max Fischer
Angela C. Zambrano,
Attorneys For Petitioners

**<u>CERTIFICATE OF SERVICE</u>**

I, Max Fischer, hereby certify that on July 22, 2015, I caused the foregoing Petitioners' Petition to Compel Arbitration and Stay Proceedings to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Northern District of California on all parties registered for e-filing in Case No. 3:15-cv-03304-KAW.  Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

By:/s/   *Max Fischer*
Robert J. Kane
Max Fischer
*Attorneys for Petitioners*